IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**DANNY LOMBARDOZZI,
MICHAEL DABNEY, and
PATRICIA DABNEY, on behalf of**
themselves and all others similarly
situated

    Plaintiff,

v.    Case No. 3:15cv533/MCR/EMT

**TAMINCO US INC.,**

    Defendant.
_____/

## ORDER

Defendant's Motion to Dismiss, ECF No. 16, is now before the court. The court finds the matter appropriate for decision without oral argument. For the following reasons, Defendant's motion is denied in part and deferred in part.

**I.    Background**

Defendant Taminco US Inc. is a Delaware corporation that owns and operates a chemical manufacturing facility in Pace, Florida. ECF No. 1 at 2. Plaintiffs are three residential property owners in Pace, who have filed this putative class action on behalf of themselves and other similarly situated Pace residents. *Id*. at 1-2. The residents, all of whom live within two miles of Defendant's facility, allege that noxious and offensive odors emanating from the facility "physically invade" their

"homes, land, and property," thereby diminishing their full use and enjoyment of the properties and decreasing the properties' value. *Id*. at 9-11.  Plaintiffs bring four claims against Defendant:  (1) public nuisance; (2) private nuisance; (3) negligence; and (4) gross negligence.  They seek certification of the lawsuit as a class action, damages for the lost use and enjoyment of their properties and for the diminution in property values, punitive damages, and declaratory and injunctive relief.

Defendant moves the court under Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiffs' claims, or in the alternative, to abstain from hearing the case based on the doctrine of primary jurisdiction.  ECF No. 16 at 3-9.  Specifically, Defendant argues that the court should dismiss or stay Plaintiffs' claims because this case involves "technical matters related to air quality and air emissions" that are not within the conventional knowledge of judges or jurors and require the specialized expertise of the Florida Department of Environmental Protection ("FDEP") to resolve.  ECF No. 16 at 2.  Defendant also argues that because the FDEP has been actively engaged in efforts to control emissions from the Pace facility in the past, the court should abstain from hearing this matter.  *Id.* at 9.  Defendant insists that the primary jurisdiction doctrine "is particularly applicable here" because "the plaintiffs are apparently seeking injunctive relief."  *Id.*  Lastly, Defendant argues that Plaintiffs' public nuisance claim is "barred as a matter of law" because Defendant's "Title V permit issued by [the

FDEP]" insulates it from public nuisance liability. *Id.* at 10-11. Plaintiffs dispute these arguments.

## II. Negligence, Gross Negligence, and Private Nuisance Claims for Damages

The doctrine of primary jurisdiction is "designed and intended to achieve a proper relationship between the courts and administrative agencies charged with particular regulatory duties." *Hill Top Developers v. Holiday Pines Service Corp.*, 478 So. 2d 368, 370 (Fla. 2d DCA 1985) (quoting *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63 (1956)). It allows a court, in the exercise of its discretion, to refer an issue "not within the conventional experiences of judges" or "requiring the exercise of administrative discretion" to an agency with specialized expertise, experience, or insight to resolve the issue. *Far East Conference v. United States*, 342 U.S. 570, 574 (1952).[1] However, the doctrine "is not designed to secure expert advice from agencies every time a court is presented with an issue conceivably within the agency's ambit." *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d 1311, 1349 (S.D. Fla. 2013). Instead, it

---

[1] In actions predicated on diversity jurisdiction, such as this one, the court must follow the substantive law of the forum state, in this case, Florida, regarding the applicability of the primary jurisdiction doctrine. *See Kendra Oil & Gas, Inc. v. Homco, Ltd.*, 879 F.2d 240, 242 (7th Cir. 1989) (stating that federal courts "defer to the primary jurisdiction of a state agency under the principles established by *Erie*, if state courts would defer."); *Mills v. Davis Oil Co.*, 11 F.3d 1298, 1304 (5th Cir. 1994) (holding that the law of primary jurisdiction is substantive pursuant to *Erie*). "Nevertheless, the background of the creation of the doctrine of primary jurisdiction is instructive in the analysis because Florida's body of law developed from the rudiments and principles espoused by the federal courts." *Swartout v. Raytheon Co.*, 2008 WL 2756577, at *2 n.11 (M.D. Fla. July 14, 2008).

"comes into play" when a claim that "is originally cognizable in the courts…*requires* the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *Flo-Sun, Inc. v. Kirk*, 783 So.2d 1029, 1038 n.5 (Fla. 2001) (quoting *W. Pac. R.R. Co.*, 352 U.S. at 63-64) (emphasis added). In such a case, the court is not deprived of its jurisdiction, rather "the judicial process is suspended pending referral of such issues to the administrative body for its views." *Id*.

"No fixed formula exists for applying the doctrine of primary jurisdiction." *Northeast Airlines, Inc. v. Weiss*, 113 So.2d 884, 888 (Fla. 3d DCA 1959) (quoting *W. Pac. R.R. Co.*, 352 U.S. at 64). Each case must be examined on its own facts to determine if "the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *Id*. This includes: (1) utilizing an agency's expert and specialized knowledge and experience; (2) protecting the integrity of an agency-administered regulatory scheme; and (3) promoting "consistency and uniformity in areas of public policy." *Flo-Sun, Inc.,* 783 So.2d at 1037. On consideration of these factors, the court finds that the primary jurisdiction doctrine does not apply to Plaintiffs' private nuisance, negligence, and gross negligence claims for damages in this case.

First, the issues involved in adjudicating Plaintiffs' damages claims are not particularly within the FDEP's discretion. Although the FDEP is charged with

enforcing Florida's environmental statutes, the FDEP has no authority to vindicate individual property rights such as those asserted by Plaintiffs in this case and it cannot provide Plaintiffs with any form of monetary relief. In those respects, Plaintiffs' claims are uniquely within the court's purview and, as such, abstention would be improper. *See*, *e.g.*, *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them"); *Cohens v. Virginia*, 6 Wheat. 264, 404 (1821) (federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not").

Second, Defendant has not persuaded the court that the FDEP's expertise and specialized knowledge is essential in adjudicating the common law tort claims in this case. The questions that predominate Plaintiffs' damages claims are within the conventional experience of judges and juries, and do not require the expertise and specialized knowledge of the FDEP to resolve. Most of the issues in this case – for example, whether Defendant breached a duty to Plaintiffs, whether Defendant's activities unreasonably interfered with Plaintiffs' use and enjoyment of their properties, and the extent of Plaintiffs' damages – are all of a type commonly adjudicated by the courts. *See Pierson v. Orlando Regional Healthcare Sys., Inc.*, 2010 WL 1408391, at *14 (M.D. Fla. April 6, 2010) ("Tort claims for damages are not something with which courts are unfamiliar or for which courts need agency

expertise to resolve."); *Swartout v. Raytheon*, 2008 WL 2756577, at *3 (noting that "[c]ourts and juries routinely decide issues of property value"); *Luckey v. Baxter Healthcare Corp.*, No. 95-CV-509, 1996 WL 242977, at *5 (N.D. Ill. May 9, 1996) (primary jurisdiction not applicable, despite EPA expertise, because "[t]housands of tort cases involving technical issues of product design and safety are decided by courts every year, and the plaintiff's case [is] indistinguishable . . . [i]f the district court believe[s] that it need[s] information from the EPA, it [can] ask the agency to file an amicus brief."). Resolving these questions will not require extensive interpretation of FDEP regulations or detailed technical analysis beyond that in which this court ordinarily engages. A decision in this case would simply be an application of the relevant Florida state common law to the facts proved at trial. While the decision of whether Defendant has complied with regulatory standards is a complex problem within the FDEP's purview, evaluating facts to determine whether a party is entitled to a common law remedy is not. The court recognizes, however, that underlying some of the legal questions here are questions of fact that may touch on environmental matters about which the FDEP has greater technical expertise than the court. To the extent necessary, the court will rely on expert testimony and evidence offered by the parties to aid in the resolution of these questions.

Third, consistency and uniformity in the environmental regulatory scheme will not be promoted by application of the primary jurisdiction doctrine here because Plaintiffs' claims do not implicate FDEP regulations or policy. Plaintiffs allege common law tort actions sounding in nuisance and negligence. Whether Defendant's facility meets Title V permitting requirements or whether its emissions violate statutory air quality standards are not at issue and Plaintiffs are not required to prove either in order to prevail on their claims. Plaintiffs do not seek to alter or change the emission or permitting standards under which Defendant operates, so Plaintiffs' claims would not interfere with the FDEP's ability to regulate airborne emissions. Moreover, it is unlikely that any relief this court might eventually order would interfere with FDEP permitting and compliance activities at the Pace facility or lead to the type of inconsistencies that the primary jurisdiction doctrine is designed to prevent.

This case is similar to *Swartout v. Raytheon Co.*, cited by Plaintiffs, in which residential property owners brought state law tort claims against an electronics manufacturing plant for allegedly contaminating the soil and groundwater surrounding their homes. 2008 WL 2756577, at *1 (M.D. Fla. July 14, 2008). In *Swartout*, the Middle District of Florida, applying Florida law, held that the FDEP did not have primary jurisdiction over the issues in that case because the plaintiffs'

complaint was directed solely toward the defendant's allegedly tortious actions and did not involve the state regulatory scheme for environmental pollution or any matters within the FDEP's unique expertise, the FDEP lacked the authority to award damages, and the judicial proceedings would not interfere with the ongoing FDEP remediation actions at the defendant's facility. *Id*. at 3. The same is true here. None of the policy reasons for invoking primary jurisdiction would be served in this case.

The Florida Supreme Court's decision in *Flo-Sun* does not compel a contrary result. *Flo-Sun* involved a single-count public nuisance action against operators of sugar cane processing facilities for harm suffered by the general public as a result of the environmental contamination allegedly generated by the facilities' operations. Unlike in this case, which primarily seeks damages for alleged harm to Plaintiffs' properties, the *Flo-Sun* plaintiffs sought "general enforcement of the state's pollution laws in the form of an adjudication of public nuisance." *Swartout*, 2008 WL 2756577, at *3 (M.D. Fla. July 14, 2008). Understandably, the FDEP was better equipped to investigate and oversee efforts to remediate the large-scale pollutant discharge alleged in *Flo-Sun*.

For the foregoing reasons, the court concludes that the primary jurisdiction doctrine does not apply to Plaintiffs' negligence, gross negligence and private

nuisance claims in this case. Accordingly, Defendant's motion to dismiss those claims is denied.

## III. Public Nuisance Claims for Injunctive Relief

Defendant contends that Plaintiffs' public nuisance claim must be dismissed because its facility is operated pursuant to a government-issued Title V permit,[2] which absolutely insulates Defendant from public nuisance claims involving its chemical emissions. ECF No. 16 at 10. In essence, Defendant argues that because its chemical manufacturing facility operates pursuant to a permit issued by the FDEP, the effects of its activities there are necessarily immune from public nuisance liability. This is incorrect.

Florida courts recognize that an "activity can constitute a judicially abatable nuisance notwithstanding full compliance with either legislative mandate or administrative rule." *State ex rel. Shevin v. Tampa Elec. Co.*, 291 So.2d 45, 48 (Fla. 2d DCA 1974) *quoted in Lake Hamilton Lakeshore Owners Ass'n, Inc. v. Neidlinger*,

---

[2] Defendant has attached to its motion a copy of its Title V Air Operation Permit. ECF No. 16-1. Generally, a district court must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint. Fed. R. Civ. P. 12(b). A court may, however, consider documents attached to a motion to dismiss without converting the motion into one for summary judgment if the documents are (1) central to the plaintiff's claim and (2) undisputed. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Defendant's attached documents are undisputed because Plaintiffs do not challenge their authenticity. *See id.* ("In this context, 'undisputed' means that the authenticity of the document is not challenged."). Whether Defendant's Title V permit insulates Defendant from public nuisance liability is central to this lawsuit. Therefore, the Court finds Exhibit A is sufficiently related to the issues in this case that it may be considered on a motion to dismiss.

182 So.3d 738 (Fla. 2d DCA 2015); *State ex rel. Gardner v. Sailboat Key, Inc.*, 295 So.2d 658, 662 (Fla. 3d DCA 1974); *See also Saadeh v. Stanton Rowing Found., Inc.*, 912 So.2d 28, 32 (Fla. 1st DCA 2005) (stating that "mere compliance with [a] zoning ordinance will not, in and of itself, absolve a property owner from any claim of nuisance"). As noted by Florida's First District Court of Appeal in *Saadeh*, "[a] court examining a claim of nuisance must focus not only upon legality, but also upon reasonableness of the use [of a property by its owner], 'as such use affects the public and private rights of others' and 'must of necessity be determined from the facts and circumstances of particular cases as they arise.'" 912 So.2d 28, 32 (quoting *Cason v. Florida Power Co.*, 74 Fla. 1, 5 (Fla. 1917)).

Applying these principles to this case, the fact that Defendant may be operating its chemical manufacturing facility within the applicable regulatory guidelines does not mean that Plaintiffs have not suffered redressable injuries as a result of those operations. Nor does it mean that Defendant is somehow immune from liability for harm it may have caused just because it has a regulatory permit. Regulatory compliance is not a grant of immunity if an activity harms the public and private property interests of others.

Defendant cites *South Lake Worth Inlet District v. Town of Ocean Ridge*, 633 So.2d 79 (Fla. 4th DCA 1994) in support of its argument that "[u]nder Florida law, a defendant's operation of a facility pursuant to an issued permit cannot constitute a

public nuisance as a matter of law." ECF No. 16 at 10. While the holding of *South Lake Worth* is informative, Defendant overstates it a bit. The *South Lake Worth* court did not hold that a plant operating with a valid permit can *never* be a public nuisance. It only held that, in that case, the "operation [of the defendant's facility] in compliance with the permit conditions simply [could not], without more that [was] lacking [t]here, be deemed a public nuisance." *South Lake Worth*, 633 So.2d at 87. The court's own language, "without more that is lacking here," expressly contemplates that there can be circumstances in which a facility's operations both comply with its regulatory permit and constitute a public nuisance. *See id*. Those particular circumstances simply were not present in *South Lake Worth*, which, notably, was decided after a full trial on the merits. *Id*. Therefore, *South Lake Worth* does not stand for the proposition that Plaintiffs are precluded from bringing a public nuisance claim simply because Defendant has a Title V operating permit. It only demonstrates that something more than "the normal, authorized and expected operation" of a permitted facility is required to sustain a claim of public nuisance. *Id*.

It also should be noted that *South Lake Worth* assumes that a permitted facility is actually being operated "in compliance with [its] permit conditions." *See id*. Defendant's Title V permit includes a "facility-wide" condition prohibiting "the discharge of air pollutants which cause or contribute to an objectionable odor." ECF

No. 16-1 at 9.  An "objectionable odor" is defined in the permit as "any odor present in the atmosphere which by itself or in combination with other odors, *is or may be harmful or injurious to human health or welfare*, which unreasonably interferes with the comfortable use and enjoyment of life or property, or which creates a *nuisance*." *Id*. (emphasis added).  Accepting Plaintiffs' factual allegations as true, which the Court must do at this stage, *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003), Defendant's facility is not being operated "in compliance with" the facility-wide condition prohibiting objectionable odors, *see* ECF No. 16-1, but rather in violation of it.  As such, to the extent the *South Lake Worth* holding even applies, it would not serve to bar the public nuisance claim in this case.

    Plaintiffs' public nuisance claim for injunctive relief, however, may require dismissal or abatement pursuant to the primary jurisdiction doctrine because, depending on the nature of the claim and the type of injunctive relief sought, the claim may impermissibly intrude on Florida's comprehensive regulatory scheme for environmental pollution.  Complicating the question is Plaintiffs' lack of specificity regarding both the type of injunctive relief they seek and the harm alleged to have been suffered by the general population as compared to the injuries unique to the putative class.  If Plaintiffs intend to pursue their public nuisance claim, they must amend their complaint to more clearly state the factual basis for this claim and the

type of relief they seek, so that the court may decide whether application of the primary jurisdiction doctrine is appropriate.

Accordingly, it is **ORDERED** that:

1. Defendant's motion to dismiss is **DENIED** as to the claims for private nuisance, negligence, and gross negligence.

2. Plaintiffs have 14 days from the date of this Order to either dismiss their public nuisance claim or file an Amended Complaint which more particularly states the nature of the injuries suffered by the general public and the injunctive relief sought.

**DONE** and **ORDERED** on this 24th day of August, 2016.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**